Adolph Kempner Co. *v.* Citizens Bank, etc.—64 Ind. App. 632.

--------

## ADOLPH KEMPNER COMPANY *v.* CITIZENS BANK OF AKRON.

### [No. 9,225.   Filed June 7, 1917.]

1. PLEADING.—*Demurrer to Answer.—Memorandum.—Statute.*— Where a demurrer to a paragraph of answer is not accompanied by a memorandum specifying wherein the paragraph is deficient for want of facts, as required by §§344, 351 Burns 1914, Acts 1911 p. 415, §346 R. S. 1881, an assignment that the trial court erred in overruling the demurrer presents no question for review on appeal. p. 639.

2. NEW TRIAL.—*Grounds.—Statute.*—Specifications in a motion for a new trial that the decision or finding of the court is not fairly supported by the evidence, that the decision or finding of the court is clearly against the weight of the evidence, that the judgment is clearly against the weight of the evidence, that certain of the special findings are not sustained by sufficient evidence and that neither of such findings, considered separately and alone, is sustained by sufficient evidence, are not recognized by §585 Burns 1914, §559 R. S. 1881, as grounds for a new trial and present no question for review on appeal. p. 640.

3. APPEAL.—*Briefs.—Specification of Errors.—Record.*—Specifications in a motion for a new trial alleging error in the admission and rejection of evidence cannot be considered on appeal

where appellant's brief does not contain any portion of the record showing any of the alleged errors, although the motion for a new trial, as set out in the brief, contains some questions and answers, but shows no objection, ruling or exception.    p. 640.

4. EVIDENCE.—*Certificate of Deposit.—Parol Evidence as to Character of Instrument.*—In an action against a bank on a certificate of deposit, where the certificate was signed by the cashier without designating himself as such, but the instrument bore an indication that it may have been issued by the cashier while engaged in the proper discharge of his duty in a transaction which was legitimate business of the bank, extrinsic evidence was admissible upon the issue whether the certificate was signed by the cashier in his individual or official capacity.    p. 641.

5. BANKS AND BANKING.—*Action on Certificate of Deposit.— Burden of Proof.*—In an action against a bank on a certificate of deposit signed by its cashier, the burden was on plaintiff to prove, before it could recover, that the issuance of the certificate was in fact the act of the bank.    p. 641.

6. BANKS AND BANKING.—*Certificate of Deposit.—Action.—Liability of Bank.*—Where a company, acting as agent for a bank cashier in conducting certain speculative transactions for him on the board of trade, requested the cashier to deposit with the company an additional $3,000 as security for the transaction, and he forwarded his worthless check, which the company sent to the bank for collection, where it was received by the cashier, who, in place thereof, mailed the company a certificate of deposit for $3,000, the company having no interest in the transaction except as agent for the cashier and neither of them having in the bank any money or anything of value as a consideration for the certificate, the bank was not liable on the certificate in the absence of a ratification by its board of directors, even though the cashier in issuing the certificate assumed to act in his official capacity, since an agent in matters touching the agency cannot bind his principal when he has an adverse interest in the transaction.    p. 641.

From Kosciusko Circuit Court; *Francis J. Bowser,* Judge.

Action by the Adolph Kempner Company against the Citizens Bank of Akron.    From a judgment for defendant, the plaintiff appeals.    *Affirmed.*

*Jacob Ringer* and *C. C. Campbell,* for appellant.

*Holman, Bernetha & Bryant, Reuben R. Carr* and *M. A. Baker,* for appellee.

Adolph Kempner Co. *v.* Citizens Bank, etc.—64 Ind. App. 632.

DAUSMAN, J.—Complaint on certificate of deposit. Answer in three paragraphs: first, verified general denial; second, no consideration; third, gambling transaction with an illegal consideration, and in violation of certain statutes of the state of Illinois. Demurrer to third paragraph of answer overruled. Reply in denial. Special finding of facts, conclusions of law thereon, and judgment accordingly.

The finding of facts and conclusions of law thereon are as follows: "The court, having been requested to find the facts in writing in this cause, and state the conclusion of law thereon, finds the facts as follows: First, the plaintiff in this action is a corporation duly organized and doing business under the laws of the state of Illinois; that it was organized on the 13th day of July, 1911, and began doing business August the 1st, 1911, with its office and principal place of business located in the city of Chicago, in the state of Illinois; that it was engaged in the business of buying and selling grain, produce and provisions, as brokers for others on commission, and also buying, receiving and selling grain and produce; that ever since its organization one Adolph Kempner has been the president and acting manager of its business; that prior to the time of its organization, said Adolph Kempner for a number of years had been engaged in the said business as a broker and commission merchant, operating and doing business under the firm name and style of Adolph Kempner & Co.; that said Adolph Kempner, as Adolph Kempner & Company, retired from said brokerage business as an individual on August the 1st, 1911.

"Second, that the defendant herein was, prior to November the 4th, 1911, a private banking institution duly organized and doing business under the laws of the state of Indiana; that it was organized and began doing business in 1903, and subsequently complied with the

law of 1905 of the state of Indiana, respecting private banks and banking, and from and after said time conducted its business subject thereto; that the capital stock of said bank was $12,000.00; that it was engaged in the banking business in the town of Akron, Fulton County, Indiana, from and after the year 1903, up to and including the third day of November, 1911; that the officers and directors of said banking institution, consisted of a board of directors of seven members, a president, vice-president and cashier; that on the 3rd day of November, 1911, said defendant was closed by order of the auditor of the state of Indiana, and since said time has not been engaged in the general banking business other than to close up the business affairs of said defendant; that during all the time of its existence one Howard B. Harter was the cashier, and active manager of said bank; that said town of Akron contained a population of about 800 or 900 people, and was located 110 miles east of the city of Chicago; that Andrew Harter, who is the father of said Howard B. Harter, was, during the years, 1910 and 1911, president of said banking institution; that said Andrew Harter lived on a farm and did not take any active part in the management of said institution; that the said directors of said bank held monthly meetings at its banking house; that the chief business at said meetings was to pass upon and approve loans and accounts and bills receivable; that the said bank was examined from time to time by the banking department of the office of the auditor of state; that on the 10th day of October, 1911, said banking department through its officers, examined said bank as of date October 9, 1911, and said officers, at the conclusion of their examination presented to the directors of said bank their report, which showed the bank to be solvent, and revealed no irregularities, and on the

request of said examiners said directors signed and approved said report.

"Third, that for some months prior to October, 1911, said Adolph Kempner was acquainted with said Howard B. Harter, and during all said time knew that said Howard B. Harter was cashier of the defendant bank, and had charge of its business affairs, and that during that time said Adolph Kempner, under the firm name and style of Adolph Kempner & Company, and Adolph Kempner Company by their said Adolph Kempner acted as agent and broker for said Howard B. Harter in the purchase and sale of grain and produce on the Chicago Board of Trade; and on the 12th day of October, 1911, said Howard B. Harter ordered and directed said plaintiff as his agent to purchase for him on the Chicago Board of Trade 300,000 bushels of December wheat, meaning thereby wheat for delivery during the month of December, 1911; that said wheat was to be purchased at the price of one dollar a bushel and said plaintiff in obedience to said order did on the 27th day of October, 1911, purchase said 300,000 bushels of wheat on the Chicago Board of Trade at the price of one dollar a bushel, and notified said Howard B. Harter thereof; that at the time said order was given said Howard B. Harter sent to the plaintiff his two checks for $3,000.00 each on the defendant bank herein; that on the 27th day of October, 1911, the said plaintiff demanded from said Howard B. Harter an additional sum of $3,000.00 for security over and above the checks aforesaid and thereupon said Howard B. Harter sent to the plaintiff his check for said sum on the defendant bank herein, payable to said plaintiff; that the plaintiff, on the receipt of said check on October the 28th, 1911, forwarded the same for collection to the defendant bank therein; that the said Citizens Bank of Akron, Indiana, by and through the said Howard B. Harter received

said check and in lieu thereof said Howard B. Harter sent by mail to the plaintiff the certificate of deposit sued on herein, which is in words and figures as follows, towit:

> " 'Citizens Bank, Akron, Indiana, No. 7927, October 31st, 1911, .............., 191... Adolph Kempner Company has deposited in this bank three thousand ............. dollars, $3,000.00, payable to the order of themselves on the return of this certificate. H. Harter'.
>
> "This deposit is not subject to check. (Written across the face.) Not over $3,000.00.

"That said certificate was by the plaintiff deposited in the Chicago Savings Bank and Trust Company, and by said bank was sent to the Fletcher American Bank, Indianapolis, Indiana, which in turn presented it in payment to the defendant, which payment was by the defendant refused and on November the 3rd, 1911, said certificate was duly protested and has not been paid; that at the time said Howard B. Harter executed said check in lieu of which said certificate was issued, said Howard B. Harter did not have on deposit in said defendant bank said $3,000.00 nor any part thereof, nor has he since said time had on deposit any money in said defendant bank; that said certificate of deposit was executed without the knowledge or consent of any officer, director or stockholder of said defendant bank other than said Howard B. Harter, and was issued without any other or different consideration than said check of Howard B. Harter; that said plaintiff did not at said time deposit in said bank said $3,000.00 nor any part thereof, nor has it since said time deposited any money therein in lieu thereof; that at the time said Howard B. Harter issued said check as aforesaid, the same was done without the knowledge or consent of any officer, director or stockholder of said bank other than himself; that no officer, director or stockholder of said bank,

other than said Howard B. Harter, had any knowledge that said Howard B. Harter was during any of said time dealing on the Chicago Board of Trade through the plaintiff herein or any other broker or commission house; that during said time said Howard B. Harter was not engaged in buying or selling grain or produce, nor in the operation of any mill or elevator or warehouse in the town of Akron, or elsewhere, other than upon the Chicago Board of Trade; that at the time said defendant bank was closed, said Howard B. Harter had stock therein of the par value of $5,000.00, but of no actual value, and stock in a bank at Macy, Indiana, in the sum of $1,400.00, and owned an automobile; that during said time, said Howard B. Harter drew as his salary as said cashier the sum of $18.00 per week and had no other business or occupation.

"Fourth, that at the time said plaintiff bought said 300,000 bushels of wheat for said Howard B. Harter, it was not expected nor intended by said plaintiff or said Howard B. Harter that delivery of said wheat would be asked for or made to said Howard B. Harter, but that the profit or loss thereof would be settled at the difference in market price of said wheat at or prior to the date when delivery thereof might be asked; that said plaintiff had no interest in said contract other than as brokers and agents for said Howard B. Harter.

"That during the year 1911, and while the plaintiff and said Howard B. Harter were having and carrying on the transactions as set out in finding Nos. 3, 4, and 5, there was in force in the State of Illinois, the following statutes, to-wit:

"'Whoever contracts to have or give to himself or another the option to sell or buy at a future time any grain or other commodity, stock of any railroad, or other company, or gold or forestalls the market by spreading false rumors to influence the price of the

commodities therein, or corners the market, or attempts to do so, in relation to any such commodity shall be fined not less than $10.00 nor more than $1,000.00 or confined in the county jail not exceeding one year, or both; and all contracts made in violation of this section shall be considered gambling contracts and shall be void.

"'All promises, notes, bonds, covenants, contracts, agreements, judgments, mortgages or other securities or conveyances made, given, granted, drawn or entered into or executed by any person whatsoever, where the whole or any part of the consideration thereof, shall be for any money, property, or other valuable thing, won by any gaming or playing at cards, dice, or any other game or games, or upon any race, fight, pastime, sport, lot, chance, casualty, election on unknown or contingent event whatever or for the reimbursing or paying any money or property knowingly lent or so gaming or betting or that shall during such play or betting so play or bet, shall be void and of no effect.'

"And the court now states its conclusions of law on the foregoing facts that the law is with the defendant, and that the plaintiff ought not to recover, and the defendant recovers cost herein."

The only errors assigned which this court can recognize are the following: The second, that the court erred in overruling the demurrer to the third paragraph of answer; the third, that the court erred in its conclusions of law; the fourth, that the court erred in overruling the motion for a new trial.

The second assignment presents nothing for our consideration for the reason that the demurrer is not accompanied by a memorandum, specifying whereto in the said paragraph of answer was deficient for want of facts, as required by §§344, 351 Burns 1914, Acts 1911 p. 415, §346 R. S. 1881. *Quality*

*Clothes Shop* v. *Keeney* (1914), 57 Ind. App. 500, 106 N. E. 541.

The fourth assignment requires us to review the action of the court in overruling the motion for a new trial. This motion specifies nineteen alleged grounds for a new trial, the first seven of which are as follows: "(1) The decision or finding of the court is not sustained by sufficient evidence; (2) the decision or finding of the court is contrary to law; (3) the decision or finding of the court is not fairly supported by the evidence; (4) the judgment is not fairly supported by the evidence; (5) the decision or finding of the court is clearly against the weight of the evidence; (6) the judgment is clearly against the weight of the evidence; (7) that each of the special findings of the court numbered from one to four inclusive, is not sustained by sufficient evidence, and that neither of said special findings, so numbered, considered separately and alone, is sustained by sufficient evidence." The third, fourth, fifth, sixth and seventh specifications are not recognized by the Code as grounds for a new trial. §585 2. Burns 1914, §559 R. S. 1881; *Lynch* v. *Milwaukee Harvester Co.* (1902), 159 Ind. 675, 65 N. E. 1025. The first and second we shall consider together, for the reason that under the latter appellant's only contention is that the finding is contrary to law because there is absolutely no evidence to support the fourth item of the finding. We have considered the evidence with care, and we have reached the conclusion that there is abundant evidence in the record tending to support the finding throughout and in every feature. The remaining twelve specifica- 3. tions consist of alleged errors in admitting and rejecting evidence. None of these twelve specifications can be considered by this court for the reason that appellant's brief does not contain any portion of

the record showing any of the alleged errors. The motion for a new trial, as set out in the brief, contains some questions and answers, but shows no objection, no ruling, and no exception. *American Fidelity Co. v. Indianapolis, etc., Fuel Co.* (1912), 178 Ind. 133, 98 N. E. 709. It follows that appellant has failed to show error in the overruling of the motion for a new trial.

The third assignment brings us to the question, Did the court err in its conclusions of law? When we look intently upon the facts, it becomes apparent that this question must be answered in the negative.

4.

Under the issues we are required to ascertain and fix the character of the written instrument which is the foundation of the action. Was the issuance of the certificate the act of the bank or the individual act of Howard B. Harter? Is the promise to pay, evidenced by the certificate, the promise of the bank or the individual promise of Howard B. Harter? He signed the certificate as plain "H. Harter," without designating himself cashier. However, the certificate bears an indication that it may have been issued by the cashier of the bank while engaged in the proper discharge of his duty in a transaction which was the legitimate business of the bank. The face of the instrument presented a query, and therefore the door was open for the admission of extrinsic evidence. The duty was on appellant to prove, before it could recover, that the issuance of the certificate was in fact the act of the bank.

5.

Even on the theory that in issuing the certificate Harter assumed to act in the capacity of cashier and intended thereby to bind the bank, the instrument created no liability whatever against the bank. The finding discloses that appellant was

6.

642    APPELLATE COURT OF INDIANA,

Adolph Kempner Co. *v.* Citizens Bank, etc.—64 Ind. App. 632.

acting as agent for Harter in conducting for him certain transactions on the Chicago Board of Trade; that appellant requested Harter to deposit with appellant an additional $3,000 as security for said transactions; that in response to said request Harter sent to appellant his worthless check; that appellant sent the check to appellee bank for collection; that the check was received by Harter, who thereupon and in lieu of said check, sent by mail to appellant the so-called certificate of deposit; that appellant had no interest in the transactions on the said board of trade other than as agent for Harter; that neither appellant nor Harter deposited in the bank, and neither of them had in the bank, any money or other thing of value as a consideration for said certificate. On these facts the transaction was, in effect, wholly between Harter and the bank. If appellant had succeeded in cashing either the check or the certificate, the proceeds would have constituted in its hands a fund to be held for the sole uses, purposes and benefit of Harter. As between Harter and the bank, he was attempting to make a loan from the bank to himself; or, in other words, he was attempting to misappropriate to his own use the funds which it was his highest duty to guard, protect and keep inviolate. But there is an old rule of law which barricaded his path and prevented the accomplishment of his purpose: "It is a rule which stands upon the solid basis of reason and common sense, that an agent in matters touching the agency cannot act so as to bind his principal when he has an adverse interest in himself. The law will not permit a conflict in this way between his interest and his duty, and removes the temptation to wrong by absolutely disabling him in such a case from acting for himself and at the same time for his principal". *Voltz* v. *Blackmar* (1876), 64 N. Y. 440; *Pope* v. *Bank of Albion* (1874), 57 N. Y. 126; *Gallery* v. *National Ex-*

*change Bank, etc.* (1879), 41 Mich. 169, 2 N. W. 193, 32 Am. Rep. 149; *First Nat. Bank, etc.* v. *Gifford* (1877), 47 Iowa 575; *Lee* v. *Smith* (1884), 84 Mo. 304, 54 Am. Rep. 101; *West St. Louis Sav. Bank* v. *Shawnee County Bank* (1877), 95 U. S. 557, 24 L. Ed. 490; 1 Morse, Banks (5th ed.) ch. XI.   See, also, *Crystal Plate Glass Co.* v. *First Nat. Bank* (1887), 6 Mont. 303, 12 Pac. 678.   Appellant knew all the facts of this case. The certificate was invalid.   It could be validated and become a claim against the assets of the bank only by an affirmative ratification by the bank's board of directors.

Judgment affirmed.

NOTE.—Reported in 116 N. E. 440.   Banks and banking: liability of bank on certificate of deposit, 75 Am. St. 58; parol evidence affecting signature of bank official, 17 Cyc 710; individual interest of cashier in transaction, 7 C. J. 552.