STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, v. THEDFORD BANK: C. F. KIRKMAN, CLAIMANT, APPELLEE: VAN E. PETERSON, RECEIVER, APPELLANT.

FILED APRIL 9, 1926.   No. 24577.

1. **Banks and Banking**: DEPOSITORS: UNLAWFUL ENTRIES. The president of a bank organized under the laws of this state has no implied authority to pay his individual debts by entering the amount of them as a credit upon the pass-book of his creditor, who keeps an account with the bank, and permitting the creditor to exhaust such account by checks which are paid, the bank having received nothing of value in the transaction.

2. ———: ———: ———: RECOVERY. If the president of a bank, without actual authority so to do, should undertake to pay his individual debts in the manner stated, the bank may recover of his creditor the amount of money it may pay out upon checks drawn upon the faith of the unauthorized pass-book entries.

3. ———: ———: ———. The fact that the president is personally interested in a transaction of the character described is sufficient to put his creditor upon inquiry as to the actual extent of the president's power.

4. ———: ———: ———: BURDEN OF PROOF. When it appears that the president of a bank, under the circumstances and the manner herein set forth, has paid and satisfied his individual indebtedness by entries of credits in the pass-book of a depositor, and such transaction is challenged by a receiver of the bank, lawfully appointed, the burden of establishing that such bank has received the money or its equivalent to cover the entries thus made is upon such depositor.

State, ex rel. Spillman, v. Thedford Bank.

APPEAL from the district court for Thomas county: EDWIN P. CLEMENTS, JUDGE. *Reversed.*

*C. M. Skiles* and *Stewart, Perry, Stewart & Van Pelt,* for appellant.

*Evans & Evans, contra.*

Heard before MORRISSEY, C. J., ROSE, DAY, GOOD, THOMPSON and EBERLY, JJ.

EBERLY, J.

The Thedford Bank, defendant, is an insolvent state bank, organized under the laws of Nebraska, in the possession and control of a receiver duly appointed, and to whom the provisions of the law guaranteeing lawful deposits was applicable. In this proceeding, claimant Kirkman prosecutes two causes of action against the bank, its receiver, and the guaranty fund; one based upon a certificate of deposit of $1,000 issued by the defendant bank, the validity of which is not questioned, and one upon an alleged deposit of $450 in the form of a checking account on which it was alleged there was still unpaid the sum of $269.59 due claimant. Claimant prevailed in district court. Judgment was there entered as prayed, and from this determination the defendant bank and receiver appeal.

The facts out of which this controversy arises are practically without dispute in the record. Prior to December 13, 1923, Nelson, then president of the defendant bank, owned, as his private property, a farm. Claimant was in the personal employ of Nelson and engaged in the construction of improvements thereon. On December 13, 1923, the work was completed and there was due claimant under his contract of employment from Nelson individually the sum of $450. On December 13, 1923, claimant called on Nelson at the banking house of the defendant and demanded from him the payment of the $450. To this demand Nelson responded: "The money is ready." Claimant replied that he wanted it in checking account in the bank. Nelson then entered the sum of $450 in claimant's depositor's pass-book,

claimant then being a patron of the bank and possessed of a checking account therein. It is conceded that in this transaction the bank actually received nothing. No money or credit of value was ever deposited by Nelson or any other person with the bank for claimant. It further appears that the sole record of the transaction is the record in the pass-book, and that no entries were made of this deposit on the books of the bank, nor was any memorandum preserved in the records thereof of that institution. So far as the record discloses, all knowledge of the transaction was confined to Nelson and claimant. Commencing on the day of the transaction and continuing until February 4, 1924, eleven checks were drawn by claimant upon the defendant bank, which checks it paid and charged to his account, which resulted in an overdraft as shown by the bank records in the sum of $180.41.

The defendants contend that the president had no authority to pay his individual debt to the depositor by giving him credit in the bank and permitting him to draw checks without its having received something of value therefor; that the entry of the credit upon the depositor's pass-book was an act beyond the scope of the president's power; that because nothing appears on the books of the bank to give notice of the facts, and the bank having received nothing of value, the bank was not bound; and that upon the claimant, he having full knowledge of the facts that the transaction was one in which the bank officer was paying his individual obligations by and with the property of the bank, was imposed the duty of ascertaining the authority and powers of the president to act for the bank in the transaction; that likewise there was imposed upon him the burden of proof of showing, in absence of express authority conferred on the president, that money or its equivalent had actually been received by defendant to cover the entry made in the pass-book. We find that the contention of the defendant bank and its receiver is not only sustained by the great weight of authority but by the decisions of this jurisdiction.

On the subject presented here, the case of *Hier v. Miller,*
68 Kan. 258, appears to be a leading case. In this case a
cashier of the bank, in sole charge of its affairs, pretends
to make payments to one of his individual creditors, a de-
positor of the bank, by giving credit for such payments in
the depositor's pass-book. No money, however, was re-
ceived by the bank and no record of the transaction was
made upon the records of the bank. Ultimately a final
settlement was had between this cashier and this cashier's
individual creditor which resulted in the surrender by the
creditor to the cashier of the latter's individual promissory
note and an entry of the amount then due upon the instru-
ment surrendered by the cashier in the creditor's pass-book
as a deposit in the bank. This creditor, as depositor, then
demanded her balance in the bank. Pursuant to the de-
mand the cashier then balanced the pass-book, and she drew
a check for the amount shown by the pass-book to be due
her, and the cashier gave her a cashier's draft upon a bank
in St. Joseph, Missouri, which draft was duly paid and re-
turned. During this transaction all checks issued by the
depositor were by the cashier paid as presented and charged
on the books of the bank against the depositor.

There were, however, no sums credited on this account
as deposits, and the total amounts of all checks drawn ap-
peared as an "overdraft." No officer of the bank had
any actual knowledge of the transaction except the cashier
and the "depositor" herself, who acted in good faith. On this
state of facts the supreme court of Kansas in *Hier v. Miller,*
*supra,* sustained the right of the bank and its receiver to
recover from the cashier's creditor the entire amount of the
overdraft thus created. The opinion of the court in this
case contains a careful examination of the authorities of all
jurisdictions, in addition to its own, and states the con-
clusion of the court in the following language: "The
cashier of a bank organized under the laws of this state
has no implied authority to pay his individual debts by
entering the amount of them as a credit upon the pass-
book of his creditor, who keeps an account with the bank,

and permitting the creditor to exhaust such account by checks which are paid, the bank having received nothing of value in the transaction. If the cashier of a bank, without actual authority so to do, undertakes to pay his individual debts in the manner stated, the bank may recover of his creditor the amount of money paid on checks drawn upon the faith of the unauthorized pass-book entries. The fact that the cashier is personally interested in a transaction of the character described is sufficient to put his creditor upon inquiry as to the actual extent of the former's power." See, also, *Home Savings Bank v. Otterbach,* 135 Ia. 157; *DeBaca v. Higgins,* 58 Colo. 75; *Bank of Proctorville v. West,* 184 N. Car. 220.

The conclusion above set forth is based upon the familiar rule of the law of agency which forbids that an agent shall act for himself and his principal in one and the same transaction. "This doctrine has its foundation, not so much in the commission of actual fraud as in that profound knowledge of the human heart which dictated that hallowed petition, 'Lead us not into temptation, but deliver us from evil,' and that caused the announcement of the infallible truth that a man cannot serve two masters." From this follows the rule that an agent may not deal in the business of his agency for his own benefit. His duty to his principal requires that his efforts shall be in behalf of, and for the benefit of, his principal alone. He cannot perform this duty if he attempts to use his agency for his own purposes. It really appears that this court has taken more advanced ground on this subject than that evidenced by the supreme court of Kansas in *Hier v. Miller, supra.*

Pursuant to the principles above set forth, this court has announced the rule as applied to managing officers of banks as follows:

"The general authority of a cashier of a bank does not authorize him to issue drafts of the bank for himself or for his private use.

"When it appears that he has thus issued drafts, there is no presumption that they were paid for when issued, and

the burden is on the party claiming that they were thus paid for to prove it." *Mendel v. Boyd,* 71 Neb. 657.

In the case above cited, a cashier of an Iowa bank became indebted to James E. Boyd, a former governor of this state, in certain business transactions. The indebtedness was his individual obligation. He attempted to discharge this indebtedness by drafts on the correspondents of the bank of which he was cashier. Some of these drafts were signed by this cashier and some by the assistant cashier employed in the bank, but all of the drafts, irrespective of the signature thereto, were actually issued by the cashier himself to James E. Boyd, the payee therein named, and for the purpose of satisfying and discharging the individual debt of the cashier to Boyd. The bank drawing these drafts received nothing in value for them and sought to recover the moneys thus received by the payee named in the instruments. The effect of the judgment of this court, affirming the bank's right to recover, is that a person accepting payment of the individual debt of a bank officer, through the medium of funds or credits received from such officer in his official capacity, must take notice of the fact that in the transaction the interests of the bank officer are adverse to the principal (the bank), and that upon the party taking advantage of such transaction and receiving the benefits thereof was imposed the burden of establishing express authority of the bank officer involved or proving that the bank had received actual value for what was turned over for the individual benefit of the bank officer. The case of *Mendel v. Boyd, supra,* has never been in any manner qualified by this court. It has been cited approvingly in *State v. Farmers State Bank,* 111 Neb. 585, and *Packers Nat. Bank v. Rushart,* 98 Neb. 354.

If this be true, and certainly the case of *Mendel v. Boyd, supra,* so holds, then in the instant case we have a situation wherein the president, who is managing officer of the bank, without authority, pays his individual obligations by an entry of a deposit in a pass-book, which deposit was, in truth and in fact, not made. The relation of the parties and the

situation was known to the claimant in this case. He knew he made no deposit. If he trusted the president of the bank to make it for him, he did so at his peril.

Under the rule announced in *Mendel v. Boyd, supra,* and in the event of the validity of the transaction is challenged, the claimant must be held to know that under the circumstances of this case the general authority of the president did not authorize nor justify him to make the entry of the "deposit" without the prior or contemporaneous receipt by the bank of the money or its equivalent. The burden of proof was imposed on claimant to establish these facts as a condition precedent to the bank's liability. No proof appears in the record and no proof was offered.

It follows therefore that the district court erred in its determination of this case. The judgment of the district court is reversed and the cause is remanded for further proceedings.

REVERSED.