590

SCHWENKER, Commissioner of Banking, Respondent, vs.
PARRY, Appellant.

*March 11—May 12, 1931.*

For the appellant there was a brief by *Platt Whitman* of Highland and *Kopp & Brunckhorst* of Platteville, and oral argument by *Arthur W. Kopp*.

For the respondent there was a brief by *James E. O'Neill* of Dodgeville and *Thomas M. Priestley* of Madison, and oral argument by *Mr. Priestley*.

NELSON, J.   Were it not for the fact that defendant's eminent counsel so earnestly contend that the decision of this court in *Columbia Bank v. Morgan,* 198 Wis. 476, 224 N. W. 707, recently decided, is unsound and out of harmony with the established law, we should deem it unnecessary to say more than that this controversy is ruled by that case and affirm the trial court.   The *Columbia Bank Case* and the present case are in all respects strikingly similar.   It is true that the *Columbia Bank Case* was decided by a divided court.   When this court first conferred on the present case, both the majority and the dissenting opinions in the *Columbia Bank Case,* as well as the authorities cited from other states in support of the opposing contentions, were given careful consideration.   This decision, therefore, has in reality involved a careful reconsideration of the legal principles governing a controversy of this kind.   At the outset the members of this court were not in entire accord as to the $5,100 check transaction involved herein.   However, after studied consideration of the facts in connection with what we consider the sound governing principles of law applicable, the court is now in entire accord.

We start out with a statement of what we consider, without question, to be sound principles of law.

(1) A customer dealing with a bank must be presumed to know the usual and customary authority of the cashier of the bank who is the principal executive officer thereof.   *Williams v. Dorrier,* 135 Pa. St. 445, 19 Atl. 1024; *Columbia Bank v. Morgan, supra,* p. 480.

(2) One dealing with a bank must be presumed to know that a cashier thereof has no authority, express or implied, to give away any of the assets of the bank.   *Markville State Bank v. Steinbring,* 179 Minn. 246, 228 N. W. 757 (in which many cases are cited).

(3) One dealing with a bank must be presumed to know that a cashier, unless duly and legally so authorized, has no authority to use the funds of the bank for the purpose of

paying his own personal debts or obligations. *Columbia Bank v. Morgan, supra;* 1 Morse, Banks and Banking (6th ed.) p. 472, § 169. That these principles of law are sound seems beyond the realm of fair controversy.

To what situations are these principles applicable?

No one can, with merit, contend that a cashier has authority to deliver to his personal creditor a note of the latter, belonging to the bank, unless the note had been actually paid by the debtor or by someone else in his behalf. *Jackson County Bank v. Parsons,* 112 Wis. 265, 87 N. W. 1083; *Home State Bank v. Hogard,* 112 Kan. 36, 209 Pac. 973. When a note belonging to a bank is so delivered it is incumbent on the maker, who has received such note, to prove payment. *Jackson County Bank v. Parsons, supra.* Nor can it be reasonably contended that a cashier, who is personally indebted to another, may pay such debt by entering in a pass-book belonging to such other a credit, unless a corresponding amount has been deposited in the bank by such other or by someone else in his behalf. The authorities are in entire accord in holding that such entry gives rise to no liability on the part of the bank. *Columbia Bank v. Morgan, supra; Hier v. Miller,* 68 Kan. 258, 75 Pac. 77; *State v. Thedford Bank,* 114 Neb. 534, 208 N. W. 627. Suppose a similar situation where the cashier, instead of making an entry in a pass-book, issues and delivers to another a certificate of deposit without a corresponding deposit actually having been made by such other or by someone else in his behalf. In such case may it be contended that such other person, without proving an actual deposit, can rightfully claim the validity of such certificate as against the bank? We think not. *First Nat. Bank v. Rust,* 257 Fed. 29; *Adolph Kempner Co. v. Citizens Bank,* 64 Ind. App. 632, 116 N. E. 440; *C. M. Condon & Co. State Bank v. Richardson,* 117 Kan. 695, 232 Pac. 1070. Other similar situations involving the certifying by a cashier of his own personal

check, or the giving out by the cashier of other properties belonging to the bank, in payment of his individual debt, are found in certain cases to which the same principles of law have been applied. *State v. Farmers State Bank,* 111 Neb. 585, 197 N. W. 386; *Rankin v. Chase Nat. Bank,* 188 U. S. 557, 23 Sup. Ct. 372.

A consideration of the authorities hereinbefore cited impels the conclusion that as to the $6,500 note Williams had not the slightest authority to mark it paid and deliver it to Parry. Parry, in dealing with Williams individually and at the same time as an officer of the bank, in a matter involving a personal transaction, must be presumed to have known that Williams had no authority to turn Parry's note over to him unless it was paid by Parry or by someone else in his behalf. In this situation the burden rested on Parry to show that either he or Williams paid the bank. This burden was not met by showing that Williams charged Peart Brothers with the amount of the Parry note and pretended to borrow, without authority, $6,500 from Peart Brothers. The account of Peart Brothers, as kept by the bank, was simply a record of the moneys which Peart Brothers had on deposit. The money deposited by Peart Brothers belonged to the bank and the account simply evidenced what the bank owed Peart Brothers. It is elementary that the relation of a bank to its depositor is that of debtor and creditor.

Defendant, however, contends as to the $5,100 transaction that it involves the presentation of a check of Dodgeville Produce Company, an established going concern, which he took, as a holder in due course, without notice of any infirmity and in good faith, and presented to the bank for payment; that the bank, through Williams as cashier, paid it by issuing a certificate of deposit to Parry for $5,100. It is, of course, well established that when a check of a third person is presented to a bank by a holder in due course for payment or credit and the check is paid by the bank and

charged to the account of the drawer, the bank cannot thereafter be heard to say that the cashing of the check resulted in an overdraft in the drawer's account for which the holder is liable to the bank. *City Nat. Bank v. Citizens' Bank,* 172 Ark. 624, 290 S. W. 48; *Nat. Bank v. Burkhardt,* 100 U. S. 686; *Woodward v. Savings & Trust Co.* 178 N. C. 184, 100 S. E. 304. Ought such established law to be applicable to a situation where the check involved is that of the cashier of a bank and is issued for the purpose of paying his individual debt, and is thereafter paid by the bank through the cashier who issued the check? Under such circumstances we hold that there is, as a matter of law, sufficient to put the payee on inquiry as to whether there are sufficient funds in the bank to the credit of such officer to cover the amount of the check. In *Rankin v. Chase Nat. Bank,* 188 U. S. 557, 23 Sup. Ct. 372, it was held "that a person accepting the check of a cashier, certified by himself and in payment of an individual debt, does so at his peril and without recourse against the bank in case the cashier does not actually have the funds on deposit wherewith to meet the check."

No clear distinction is perceived between the giving to a depositor of credit in his pass-book without an actual deposit, the turning back to him of his note owing to the bank, the issuing and delivery to him of a certificate of deposit, the turning over to him of notes of third parties by the cashier, in discharge of the cashier's personal debt, on the one hand, and the giving to the depositor of a check of the cashier which is immediately presented to the cashier for payment or in exchange for a certificate of deposit. No real distinction is perceived between the giving out of a personal check on his own bank by the cashier in payment of his individual debt, which he thereafter cashes, and the certifying of his own individual check on his own bank which is delivered in payment of his individual debt. Cashing his own check or certifying his own check are quite similar and

must, we believe, be governed by the same principles of law. If there be any distinction between these various transactions it is in form only. Transactions involving the giving out of personal checks by a cashier under such circumstances and for such purposes should clearly, it seems to us, be governed by the same rules of law which declare that a person dealing with a bank is presumed to know that a cashier has no authority to give away the properties of a bank or to use the funds or property of the bank to pay his personal debts or liabilities.

We hold, on grounds of sound public policy, that when a bank cashier delivers his personal check on his bank to a person for the purpose of paying his debt, such person takes the check at his peril and without recourse against the bank unless the cashier has funds on deposit with which to meet the check. Payment of the check, by the cashier, as an officer of the bank, should not be held to close the transaction.

The whole body of our statutory law relating to banks exists almost wholly for the purpose of making the banks organized under it both safe and sound. Banks are recognized as being quasi-public institutions (*Columbia Bank v. Morgan, supra*), in which the public at large is vitally interested. The approval by us of a less stringent rule would give a dishonest cashier an opportunity, through his personal dealings with his creditors, to work havoc and disaster not only to the bank and its stockholders but also to its numerous depositors.

The rule adopted may at times seem to operate unjustly on persons dealing in good faith with bank cashiers; but we think, on the whole, that such a rule will be found to be wise, salutary, and just. Such a rule, when clearly established, can work injustice only to those who act in complete ignorance of it, negligently ignore it, or intentionally disregard it.

We are not unmindful of the fact that there exist throughout the state of Wisconsin many small banks which are managed almost wholly by their respective cashiers; that such cashiers generally have accounts in their own banks, against which they issue checks involving their own personal matters; and that such checks of necessity must later on be cashed by the same cashiers who issue them. We also sense the possibility of situations arising in which it may be somewhat embarrassing for a person dealing with a cashier to make inquiry of other officers of the bank as to whether a given check is protected by adequate funds; but unless he makes such inquiry he assumes the risk. *Columbia Bank v. Morgan, supra; Columbia Bank v. Markgraf,* 195 Wis. 472, 218 N. W. 712.

We now come to the consideration of the question involved in the giving of the Produce Company check to Parry by Williams, which the former, without indorsement, immediately turned back to Williams, as cashier, with the request that a certificate of deposit for $5,100 be issued. The court found that Williams, at the time, was the sole owner of the Produce Company and that Parry knew that Williams was such sole owner. There is abundant evidence to sustain both such findings. Under these circumstances, ought it to be successfully urged that the check in question was the check of an entity separate and distinct from its sole owner? We think not. No case involving the identical question, in which the facts are substantially similar, has been cited for our consideration and we have been able to find none. Several cases have been cited involving the giving of a check by a corporation of which the cashier of the bank was an officer or stockholder. *Pemiscot County Bank v. Central State Nat. Bank,* 132 Tenn. 152, 177 S. W. 74.

Such cases, however, do not control this controversy, since they are clearly distinguishable, at least on the ground

that a corporation is an entity separate and distinct from its officers and stockholders.

We find nothing in this case which leads us to hold that the check transaction was any different than it would have been had Williams issued his personal check or issued no check at all but simply issued to Parry a certificate of deposit.

But one other contention of the defendant requires consideration. The defendant contends that the plaintiff cannot, in this action, be heard to question the $6,500 note transaction because in his defense of the action brought by Peart Brothers against him he assumed an inconsistent position and unsuccessfully defended said action' on the ground that Peart Brothers had loaned $6,500 to Williams. At the time the plaintiff took charge of the defunct bank, Williams, who had had almost complete charge thereof, had committed suicide. The records of the bank indicated that Peart Brothers had been charged with $6,500;. that the amount so charged went to offset or balance the sixty-five hundred dollar note surrendered to Parry. After Williams' death a note was found in his handwriting which acknowledged an indebtedness of $6,500 to Peart Brothers. These records clearly tended to show that Peart Brothers had loaned $6,500 to Williams. The plaintiff had no knowledge of the true situation. When the plaintiff was sued by Peart Brothers it was proper for him to assert a defense to the action which the records of the bank seemed clearly to justify. True, the information which he acted upon was not very satisfactory, and upon the trial of the action it was determined that Peart Brothers had not loaned the $6,500 to Williams. No reasons are perceived for holding that the plaintiff, by defending the Peart Brothers action, waived his right to prosecute this action. Had the plaintiff's defense in the Peart Brothers action proven good rather than erroneous and unfounded,

or had his defense been successful, he no doubt would be concluded thereby and would not now be permitted to recover again the amount of the sixty-five hundred dollar note from Parry. If Peart Brothers had, in fact, loaned the $6,500 to Williams, which was charged to their account, then the inference would be strongly justified that Williams used the $6,500 so borrowed to pay the bank for the note surrendered to Parry. This, however, is not the situation. The plaintiff, upon being sued by Peart Brothers, necessarily had to take some position. Such position taken was, upon the trial, determined to be erroneous. The position taken by him in good faith and upon such information as was available to him should not, in our opinion, be binding upon him as a waiver or as an estoppel in subsequent litigation with one who was not a party to the Peart Brothers action and in which another issue is involved. For the reasons stated, we perceive no just reason for reversing or modifying the judgment of the trial court.

*By the Court.*—Judgment affirmed.