Isaac, Respondent, vs. Gerretson Company, Appellant.

*October 11, 1922—February 6, 1923.*

*Master and servant: Manager of store: Compensation: Share in profits: When payable: Duty of manager to effect insurance: Evidence: Sufficiency: Appeal: Notice to review on behalf of respondent: When timely served.*

1. A finding of the trial court that a verbal contract under which plaintiff undertook to manage a store for the defendant contemplated that plaintiff was to receive, in addition to a salary, twenty-five per cent. of the net yearly profits from January 1, 1919, to be paid annually, and as disclosed by an accounting on the first of each year, is sustained; the mutual agreement that no share of the profits was to be paid for 1918 because no profits were realized, and defendant's attempt to induce plaintiff to take shares of stock in the defendant company in payment of a percentage of his profits, together with an entry on defendant's books of a reserve for plaintiff of twenty-five per cent. of the profits of 1919, supporting the finding that the profits to plaintiff were to become due each year and were not to be postponed until the expiration of the contract of employment. *Thomas v. Columbia Phonograph Co.* 144 Wis. 470, distinguished.

2. Such finding entitled the plaintiff to a recovery of his profits for the year 1919 irrespective of any losses that may have resulted in 1920.

3. Where defendant interposed a counterclaim for loss suffered because of plaintiff's alleged neglect to insure property up to ninety per cent. of its value, as instructed, the evidence is *held* to show that plaintiff was not required to insure the property as alleged, in the absence of specific instructions to that effect, where the officers of the defendant had complete information and control of the affairs of the store and had all policies of insurance renewed on a uniform basis without the knowledge of plaintiff.

4. Although defendant contended that by reason of plaintiff's neglect of his duty defendant had no knowledge of the fur-repairing department in the store, so as to have it fully insured, thereby suffering loss, the evidence is *held* sufficient to sustain a finding that the company had full knowledge as to the fur department and that the goods therein were included in the blanket insurance policy.

5. The case on appeal being, on September 16th, assigned for hearing, a notice for the review, on behalf of the respondent, of certain findings, served on October 2d, was served too late. *Milwaukee Western Fuel Co. v. Industrial Comm., ante,* p. 223.

DOERFLER, ESCHWEILER, and JONES, JJ., dissent in part.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

The complaint alleges a cause of action on a verbal contract, in that the plaintiff was to act as manager and salesman for the defendant in a store for the sale of women's ready-to-wear goods at Fond du Lac, and was to receive for his services $50 a week and twenty-five per cent. of the net profits of the business; that the plaintiff entered the service of defendant in August, 1918, and continued until the 1st of March, 1920; that plaintiff was paid $50 per week but had received nothing for his commissions; that the commissions or profits of 1918 had been satisfactorily adjusted, and plaintiff made claim for profits or commissions for 1919 of $6,112.

The defendant answered admitting the employment, payment of salary, denying adjustment of commissions or profits for 1918, denying any amount due, and counterclaiming to the effect that it was the duty of the plaintiff to keep the goods, furniture, and fixtures of said store insured, and that he had failed to do so; that a fire on January 21, 1920, destroyed such stock of goods, furniture, and fixtures, and that by reason of the failure of the plaintiff to insure, the defendant had suffered loss to the extent of $6,899.30. Plaintiff replied, in substance denying the allegations of the counterclaim.

The case was tried before the court without a jury. The court found:

1. That the defendant, a Wisconsin corporation, with its principal office in Milwaukee, had for many years engaged in conducting a merchandising business in women's ready-to-wear garments at Milwaukee, and that plaintiff had for many years conducted a similar business at Fond du Lac.

2. That the parties entered into an oral agreement in the summer of 1918 whereby the plaintiff was to act as manager for the defendant and receive a salary of $200 per month and a commission of twenty-five per cent. of the net profits, and that otherwise said agreement was wholly indefinite.

3. That the store opened October 1, 1918, for business, and that thereafter it was considered by the parties that the opening expenses had been so heavy that no profits had been made, and it was mutually agreed that the accounting period should begin January 1, 1919.

4. That the profits of 1919 were $17,353.76, including the proportion of the general overhead expense of the defendant in conducting its two stores, and a handling charge on goods sent from the Milwaukee store to the Fond du Lac store of five per cent. and a similar charge on goods returned from the Fond du Lac store to the Milwaukee store; a charge of $388.67 for expense in the taking of inventories; a charge of $110 made by the company to the Fond du Lac

store to pay for membership of one of the Gerretsons in the Fond du Lac Town & Country Club; and that the plaintiff made no demand for payment of his share of the profits for 1919 until about February 1, 1920.

5. That the profits of said business from January 1, 1920, to January 21, 1920, were $1,565.95.

6. That plaintiff had been paid no commission or profits.

7. That inventories were taken of the business as of January 1, 1919, July 1, 1919, and January 1, 1920, and at the conclusion of the 1920 inventory defendant entered upon its books an item in substance as follows: "Reserve for commissions $4,662.85," which sum was twenty-five per cent. of the net profits of said business as shown by its books, and which referred to and was intended to cover the commissions of plaintiff.

8. That a fire destroyed the business on January 21, 1920, to the extent of $27,048.14, and thereby rendered it impossible to continue the business in the building or to renew business elsewhere for a period of several months; that plaintiff continued with the defendant until after the fire sale, and then refused to continue his services after March 1, 1920, and thereafter opened up a store of his own in Fond du Lac.

These first eight findings of the court are accepted by both parties as being substantially correct.

The court further found:

9. That the defendant instructed the plaintiff, in general terms, to keep insurance on the contents of its store, and all insurance carried was procured by plaintiff. All policies were forwarded to Milwaukee and there retained. The premiums were paid by the defendant from the Milwaukee office, where the defendant kept an insurance register. The policies and register were in the direct charge of the principal officers of the defendant. Defendant also kept at its Milwaukee office books based upon daily reports from the Fond du Lac store, showing all goods received and sales

made; that such data was incomplete at times because of delays in reporting and because of garments kept for alteration and repairs, but that the principal managing officer of the defendant frequently visited Fond du Lac and was informed concerning all the operations of the store; that in the fall of 1919 plaintiff was instructed to take out additional insurance, but was not told how much, and that he did take out $4,500 additional and forwarded the policies to the Milwaukee office; that $1,000 was taken out on plate glass, but through inadvertence the policy was not sent to Milwaukee; that in the summer of 1919 defendant had all of its Fond du Lac policies made uniform, inserting therein the standard ninety per cent. co-insurance clause; that this change was made by the principal officer of the defendant having the insurance in charge, and the plaintiff had no knowledge of the existence of said co-insurance clause or its legal effect; that at the time of the fire the amount of insurance required to cover the property was $44,299.75, whereas only $33,000 was covered by the policies in force, and under the terms of the policies the defendant became co-insurer to the amount of $11,299.75, making a net loss by failure to fully insure of $6,899.30; that defendant had ample time to direct and procure additional insurance after additions to its stock, if it desired to do so, and plaintiff understood that defendant would demand more insurance when necessary; that plaintiff did not understand that he was required to keep insurance in force to the amount of ninety per cent. of the property, or that he was solely responsible for carrying adequate insurance.

As conclusions of law the court found, under practical construction, that it was the intent of the parties to make annual periods of accounting; that the plaintiff was not liable for not procuring adequate insurance; and that he was entitled to judgment for $4,338.44 with interest from February 1, 1920, to which findings of fact and conclusions of law defendant assigns as errors: the failure to find that

Isaac v. Gerretson Co. 179 Wis. 417.

the plaintiff was required to keep full insurance; the finding that the plaintiff did not understand that he was to keep the business insured to ninety per cent. of the property carried; the conclusion of law as to the intent of the parties to the contract, and the conclusion that the plaintiff is entitled to recover.

*Robert N. McMynn* of Milwaukee, for the appellant.

For the respondent there was a brief by *Duffy & McGalloway* of Fond du Lac, and oral argument by *F. Ryan Duffy* and *J. P. McGalloway.*

The following opinion was filed December 5, 1922:

CROWNHART, J.   This case presents questions of fact, very largely, rather than questions of law.   The court found the facts favorable to the plaintiff, and his findings must be sustained unless we can say that such findings are against the great weight or clear preponderance of the evidence.

The first question is to determine the intent of the parties in making the contract.   The contract was oral and quite indefinite.   It must be interpreted to some extent from the surrounding facts and circumstances.   Prior to making the contract both parties had been in the same line of business, the plaintiff at Fond du Lac and the defendant at Milwaukee.   It is clear that the plaintiff had an established good will in and around Fond du Lac, and that the defendant was desirous of securing not only his services as manager but the good will that he would bring to the company.   The direct salary of $50 per week was very modest and evidently intended to take care of his immediate necessities, while the percentage of profits was intended to secure from the plaintiff his best efforts in producing profits for the company. The profits were intended to enhance the plaintiff's income. It seems to have been the contemplation of the parties that the relationship thus established would continue for a long time, and it is only fair to infer that the plaintiff expected

and would need his profits from year to year in his personal affairs, and it is also fair to presume that the company would follow the usual custom of making yearly inventories and balances and declare dividends. It follows that it might well have been intended that the yearly period of inventory and accounting would be followed by a distribution of plaintiff's share of the profits. The contention of the plaintiff is supported by the fact that the parties did talk over the matter of profits for the year 1918, and that it was agreed that owing to the heavy expense of establishing the business no profits should be considered for that year. The testimony of plaintiff and that of defendant does not agree as to what actually occurred, but the fact is plain that they did talk the matter over, and one of the Gerretsons said "What is the use of talking about profits—there are no profits." He did not say and did not contend that the period of accounting was not at hand, but he did contend that there were no profits to be divided. The inventories were not completed and balances struck for the year 1919 until about January 15th. At that time the defendant entered upon its books for the plaintiff a reserve of twenty-five per cent. of the profits as it determined, showing an intention on the part of the defendant to make yearly accounting of the profits to the plaintiff. Prior to this time one of the officers of the company tried to induce plaintiff to take stock in the company in payment of his percentage of profits. This would indicate his understanding that such profits would be presently due.

Reliance is had by the defendant on *Thomas v. Columbia P. Co.* 144 Wis. 470, 129 N. W. 522. That case may be distinguished from this in that the holding there that the profits were not to be distributed till the close of the period of adventure was unnecessary to the decision of the case, for the court held that the parties had made a settlement in full. Further, the court held that the parties had made a practical construction of the contract by their method of

accounting extending over three years.    The *Thomas Case* is
authority for determining the intent of the parties to the
contract by their subsequent practical construction of it.

We conclude that the inference of the trial court was
properly drawn, to the effect that the accounting period
should be as of January 1st each year, and that it was not
intended or expected by either party that the plaintiff should
wait until the dissolution of the contract for the payment
to him of his profits.    This finding of the court entitled the
plaintiff to a recovery of his profits for the year 1919, in-
dependent of any losses that may have resulted in the year
1920.

The defendant contends that the plaintiff was instructed,
and it was a part of his duty, to secure full insurance up to
ninety per cent. of the value of the property in the business,
and that he failed and neglected to do this, whereby the
defendant suffered a fire loss of nearly $7,000.    Here again
the facts were in dispute, and the court found for the
plaintiff.    It is very apparent that while the plaintiff was
designated as manager of the defendant's store at Fond du
Lac his management was quite limited and that he was not
allowed to exercise his judgment generally.    The defendant,
through its officers, visited the store on an average of once
a week, went over the matters of business in detail, and
gave the plaintiff instructions from time to time.    Shortly
after they went into business plaintiff was instructed to pro-
cure insurance, and he was advised to divide the insurance
among the local agents in such a way as to promote the
company's business.    No definite amount of insurance was
stated, and the plaintiff procured insurance and forwarded
the policies to the defendant at Milwaukee, and the defend-
ant paid the premiums.    In May, 1919, one of the defend-
ant's officers came to Fond du Lac, took all the policies of
insurance, and had them rewritten on a uniform basis, and
inserted the standard ninety per cent. co-insurance clause,

which materially reduced the amount of insurance carried. Plaintiff was not consulted with reference to this, and did not know of the change made in the contract or the legal effect thereof. The policies were taken back to Milwaukee and a record made of the insurance carried, which record was kept in the Milwaukee office. It is significant on the subject of the defendant's control and knowledge of the business that the company sent one of its employees from Milwaukee to Fond du Lac to make reports direct to the company. She did this, and the plaintiff exercised no control over her. Daily reports were made from the Fond du Lac store to the Milwaukee office as to the business carried on, and the defendant had the information in its Milwaukee office, available to it at all times, to determine whether or not additional insurance should be effected. Officers of the company kept in close touch with the business at Fond du Lac by frequent visits, and knew in general and in detail the business situation. They frequently talked the matter of insurance over with the plaintiff, and advised him when they wanted additional insurance. When so advised the plaintiff carried out their instructions to the best of his judgment. He did not have the policies with him, did not have the policy record, and did not know in detail how much insurance was being carried. It would seem that the finding of the trial court is amply sustained by the evidence. The defendant can hardly be heard to say, in view of its full knowledge of the amount of insurable property and the amount of insurance carried and its absolute control of the affairs of the company, that the plaintiff was responsible for the failure to carry full insurance.

The defendant claims it did not have complete knowledge of the business for insurance purposes, and cites the fact that the plaintiff conducted a fur-repairing department and such furs were not included in the reports made to the Milwaukee office. We think the evidence shows that the com-

pany had full knowledge as to this department, and that the goods were included in the coverage under the policies of insurance. Mr. W. F. Gerretson testified:

"I knew that there was fur repair going on at Fond du Lac, and I knew in a general way the kind of furs that were used for that purpose. When I and other Gerretsons came to Fond du Lac and looked over the store, as far as I know, we usually went around the fur and other departments. We knew that the insurance that we had was blanket insurance to cover furs and merchandise of all descriptions. I know of no instructions that were given to *Albert Isaac* by the *Gerretson Company* to make any particular or definite report as to the amount of goods for alteration of furs, for repair."

The plaintiff seeks to bring up for review certain findings to which he took exception in the court below. Defendant objects on the ground that the notice was served too late. The case was assigned for hearing September 16, 1922, but the notice for review was not served until October 2d. Under the recent case of *Milwaukee Western Fuel Co. v. Industrial Comm., ante,* p. 223, 190 N. W. 439, the notice was too late.

*By the Court.*—The judgment of the circuit court is affirmed.

The following opinion was filed December 27, 1922:

Doerfler, J. (*dissenting*). The defendant maintained its principal business at Milwaukee and conducted a branch at Fond du Lac. This branch business was placed under the management of the plaintiff, who was not only employed as a general manager on a monthly salary, but was also given a substantial interest in the yearly net profits of the business.

Plaintiff, prior to becoming the manager of the branch business, had years of experience in conducting a similar enterprise. He admits that when the branch store opened

he was charged with the general duty of securing adequate
fire insurance, and the court so found.    That placed the
obligation with respect to insurance upon him, and that
obligation could only be shifted by a modification of the
prior agreement.   It is not contended by the plaintiff that the
policy of the company was changed by express agreement,
but that when the general change took place with respect
to the forms of the policies, which was some time in May,
1919, the defendant company took over and assumed charge
of all matters pertaining to insurance.

The plaintiff admitted that at all times prior to the fire
he placed every insurance policy on the stock himself, but
asserted that he received directions from time to time from
officers of the defendant on the subject, and that he merely
carried out their expressed desires.   He also testified that
after the change in the form of the policies in May, 1919,
all·of the policies were kept at the Milwaukee office and that
the premiums were paid from such office.   Nevertheless, he
admitted that during the county fair, in the fall of 1919, he
procured a policy for $1,000 on his own initiative, and,
shortly after, procured additional policies upon the holiday
stock aggregating $4,500.   Plaintiff contends that before the
additional insurance of $4,500 was obtained he had a con-
ference with one of the defendant's officers, who directed
him to procure additional insurance, but that he was not
instructed as to the amount.

The court's finding on the subject is as follows:

"Upon the receipt of the winter stock in the fall of
1919, the defendant's said principal managing officer in-
structed plaintiff to take out additional insurance, but did
not indicate how much.   Plaintiff at said time took out
$4,500 additional insurance and forwarded the policies
therefor to the Milwaukee office where the same were en-
tered on said register and thereafter kept, and all of which
were in force at the time of the said fire."

The findings of the court above quoted are not in accord-

ance with the evidence, and the incorrectness of a main fact found is conclusively shown by the testimony of the plaintiff himself. In referring to a conversation had with one of the Gerretsons after the fire he testified:

"I recall telling Mr. Gerretson just after the fire that I had additional insurance. I recall finding that additional insurance. As to how much it was, . . . it was these policies that we referred to in my testimony this morning, this $4,500. They were taken from the store the night of the fire with all the books and everything, I presume by myself. . . . After Mr. Gerretson made inquiry I found them at my home, with the other office books and papers and everything."

It also appears from the evidence that when the Gerretsons called upon the plaintiff after the fire he did not know how much additional insurance had been taken out, notwithstanding the fact that he had policies representing $4,500 of insurance in his own home which he had taken from the safe during the fire.

So that the defendant did not have a complete record of the insurance in force; did not have in its possession all of the policies of insurance; did not even know the amount of additional insurance taken out by the plaintiff to protect the heavy stock carried for the holiday trade; and it appears beyond controversy that after the fire the defendant did not know whether or not it was adequately covered by insurance.

Therefore the record presents this situation: That plaintiff was the manager of the branch store, charged with the duty of effecting adequate insurance; that he procured every policy of insurance effected on the stock; that he was instructed during the fall of 1919 to take out additional insurance, which instruction, properly construed, could only mean adequate insurance; that instead of taking out adequate insurance he simply effected additional insurance to the extent of $4,500, of which amount he failed to notify the defendant, and with respect to which insurance he re-

Isaac. v. Gerretson Co. 179 Wis. 417.

tained the policies in his own possession; and that he effected at least $1,000 of insurance without even consulting the defendant. Under these circumstances, whether there had been a change in the policy of the defendant with respect to insurance in the month of May or not, when the plaintiff assumed in the fall of the year to effect additional insurance, which meant adequate insurance, he was charged with an obligation as manager, which if negligently or improperly performed, resulting in loss or damage to his principal, would make him liable. Plaintiff was on hand in the store as manager constantly. He had a complete record of the stock. From time to time valuable articles of merchandise, such as furs, were left in the store for repair, of which the defendant had only a casual knowledge, and the evidence shows that at the time of the fire there were on hand furs belonging to customers aggregating in value about $4,500.

Independent of the direct testimony in the case, the facts and circumstances are of such a nature as to indelibly impress one who has carefully read the record with the conclusion that a specific and definite responsibility rested upon the manager to procure and have on hand at all times adequate fire insurance.

Adequate insurance of a business in this day and generation is not only a great protection but a necessity. It is a subject that banks carefully inquire into upon extending credit to a business. In the nature of things the duty to effect insurance is definite, and the responsibility ought not and cannot safely be divided. In the instant case it clearly rested upon the manager, and this was one of his principal obligations. True, he received advice from time to time, but this did not relieve him from responsibility. But whatever view we may take of this case, the one important and outstanding fact decisive of this branch of the case consists of the direction on the part of an officer of the company to the plaintiff, in the fall of 1919, to effect additional insurance, which could have but one meaning, and that is adequate

insurance, and this responsibility the plaintiff assumed but failed to carry out.    Plaintiff therefore should be held liable for his neglect of duty.

The law is clearly stated in 31 Cyc. 1465, 1466:

"In the absence of any instructions from the principal or any duty implied from established usage or the previous dealings between the parties, an agent will not be liable for failure to insure property of the principal in his possession; *but an agent whose duty it is and who undertakes to effect insurance for his principal must exercise due care and skill in so doing, and will be held liable for losses resulting from his negligence, such as negligence in failing to effect the insurance, to procure the proper amount, to procure a valid and enforceable policy, to keep it renewed and in force, or to notify companies in which insurance has been taken of other insurance subsequently taken in other companies.*"

I therefore respectfully dissent from that portion of the opinion pursuant to which the plaintiff was not held liable on the subject of insurance.

Mr. Justice JONES and Mr. Justice ESCHWEILER concur in the foregoing dissent.

A motion for a rehearing was denied, with $25 costs, on February 6, 1923.