MATZ, Guardian, Appellant, vs. IBACH and others (BANK-ING COMMISSION), Respondents.   [Three cases.]

*March 12—June 4, 1940.*

48

For the appellant there was a brief by *Winter & Koehler* of Shawano, and oral argument by *P. J. Winter* and *H. E. Koehler*.

For the respondents there was a brief by *Bouck, Hilton, Kluwin & Dempsey* of Oshkosh, and *Evrard & Evrard* of Green Bay, and oral argument by *Ray C. Dempsey* and *R. E. Evrard*.

The following opinion was filed April 9, 1940:

MARTIN, J. In addition to the facts found by the court, it appears that at the time of Herzfeldt's appointment as guardian of the person and estate of said minors, the property of the wards consisted of a mortgage on certain real estate in Shawano county, also a balance of $81.55 in a checking account in the Caroline State Bank. On or about September 26, 1930, the mortgagor obtained a federal land bank loan and, out of the proceeds of said loan, paid Herzfeldt as guardian, the sum of $7,502.15, being the full amount then due on said mortgage with interest. This sum was, on the same day, deposited by Herzfeldt in the Caroline State Bank in his name as guardian, the deposit being put on a checking account.

It further appears without dispute that on October 6, 1930, Herzfeldt, as guardian, drew a check on these funds

payable to the Caroline Hardware Company, Inc., in the amount of $4,462.84; that on October 15, 1930, he, as guardian, drew a second check on said funds payable to said hardware company in the amount of $123.20; that on October 17, 1930, he drew a third check as guardian on said funds payable to said hardware company in the sum of $2,500; and again on October 22, 1930, as guardian he drew a fourth check on said funds payable to said hardware company in the sum of $336.15, amounting in all to $7,422.19. The four checks above mentioned were all charged against Herzfeldt's account as guardian.

Mr. Herzfeldt, in his report to the county court of Shawano county for the years 1928 and 1929, showed the aforesaid real-estate mortgage in his possession as guardian. His report for the year 1930, made in 1931, showed a balance of $7,531.55 in his possession as guardian, represented by ten notes aggregating $7,422.19, plus a cash balance in the bank of $109.36. His report for 1932 showed the same amount on hand as to cash in the bank and eleven notes aggregating $7,422.19. The report for the following year was the same. In his report for the year 1934 he showed a deposit in a savings account in the sum of $7,196.47 and a balance in a checking account of $35.08. For 1935 he showed a checking account of $60 and a savings account of $6,550.71 and a note of $900. For 1936 he showed a savings account of $6,094.16 and a checking account of $136.57. On August 15, 1936, he showed an item disbursed to Hildegard Matz in the sum of $1,555.78. His report for the year 1937, filed on January 24, 1938, which was his last report filed in the county court, showed a savings account in the sum of $6,134.34 and a checking account of $76.93. The court found that the foregoing sums in the savings account were in fact never deposited in the Caroline State Bank, and that the entries thereof in both the savings-account book and on the savings-account ledger sheet were all false and fraudulent.

A bank examiner testified that there was a small variation in the bank accounts in June, 1930, but that it was taken care of in the following six months' period; that the start of the real shortage period was December 26, 1931, and it continued to increase from that time on; that between June 27, 1931, and December 26, 1931, there was a shortage of $4,361.60; and that at the time Herzfeldt committed suicide, the total shortage was between sixty and seventy thousand dollars.

The appellants contend that the legal title to the moneys deposited by Herzfeldt remained in his wards and that he could only withdraw same for legitimate guardianship purposes for the benefit of his wards; that the thefts and embezzlements were committed by Herzfeldt as cashier and the moneys converted to his own use; and "that the conversion of said minor's deposit was a part and parcel of a general scheme of looting and defrauding said bank as cashier and that the title to said deposits in said minor was not in any manner changed by the acts of said former cashier and guardian." Appellants further contend that the bank is estopped from denying the truth as to the entries made by Herzfeldt as cashier in the savings account book. Appellants make the further contentions that the moneys deposited were not withdrawn by Herzfeldt as guardian; and that the bank had knowledge of the misappropriation on the theory that knowledge of Herzfeldt as cashier was the knowledge of the bank.

Sec. 112.01 (8) of the Uniform Fiduciaries Act, ch. 112, Stats., provides:

*"Deposit in name of fiduciary as such.* If a deposit is made in a bank to the credit of a fiduciary as such, the bank is authorized to pay the amount of the deposit or any part thereof upon the check of the fiduciary, signed with the name in which such deposit is entered, without being liable to the principal, unless the bank pays the check with actual knowledge that the fiduciary is committing a breach of his

obligation as fiduciary in drawing the check, or with knowledge of such facts that its action in paying the check amounts to bad faith. If, however, such a check is payable to the drawee bank, and is delivered to it in payment of or as security for a personal debt of the fiduciary to it, the bank is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the check."

It is conceded that Herzfeldt on September 26, 1930, received, in his official capacity as guardian, the proceeds of the real-estate mortgage amounting to $7,502.15, and that on said date, he deposited all of said amount in the Caroline State Bank to his credit as guardian. Thereupon the relation of debtor and creditor between the bank and Herzfeldt as guardian attached as to the moneys so deposited.

It is further conceded that during the period of October 6, 1930, to and including October 22, 1930, Herzfeldt as guardian issued four checks against his guardianship account aggregating $7,422.19. These four checks were payable to the order of the Caroline Hardware Company, Inc., of which company Herzfeldt was the secretary-treasurer. It appears that as to part of this amount, the Caroline Hardware Company, Inc., issued its notes to Herzfeldt as guardian. The evidence does not disclose whether the full amount was covered by notes. However, it does appear in Herzfeldt's report as such guardian to the county court for the year 1930, that he had on hand ten notes aggregating $7,422.19, being the identical amount for which he issued checks to the Caroline Hardware Company, Inc., between October 6 and October 22, 1930, his report to the court having been made in the early part of 1931. In addition to these notes, the report showed a cash balance in the bank of $109.36.

The testimony discloses that the first embezzlements by Herzfeldt of any moneys belonging to the bank occurred on

June 27, 1931. However, between that date and December 26, 1931, he embezzled funds of the bank to the extent of $4,361.60. Of course Herzfeldt was acting in a dual capacity, on the one hand as guardian of the funds of his wards, and on the other as cashier of the bank. However, his knowledge of his own unlawful acts as cashier is not imputed to the bank or its officers.

"The rule that the principal is affected with knowledge acquired by the agent in the transaction to which his agency relates is based upon the duty of the agent to disclose to his principal all knowledge and information he possessed at the time or acquired in relation to the subject matter of the agency, and, the presumption is that he communicates it accordingly; *but he cannot be expected to communicate information which, from his relation to the subject matter, he would not disclose; and where his relation to the previous transaction is such as would be sufficient to induce him to withhold the information the presumption of its communication is rebutted."* Cole v. Getzinger, 96 Wis. 559, 576, 71 N. W. 75; *Joslin v. National Reserve Ins. Co.* 201 Wis. 506, 508, 230 N. W. 711. See also 7 Am. Jur. p. 374, § 520.

To the same effect see *Fidelity & Casualty Co. v. Maryland Casualty Co.* 222 Wis. 174, 181, 268 N. W. 226 (citing cases). In this latter case, Hart was the executor of at least three estates. He was also president of the bank in which he kept his accounts as such executor. The action was to recover alleged shortage in one of the estates. It appears that he used the funds of one estate to make up the shortage in the others, in other words, taking from Peter to pay Paul. After quoting approvingly the rule stated above, the court said:

"The rule of these cases is applicable here. When Hart deposited for collection the original certificate of deposit, the bank's duty was to account for the proceeds to him as executor. He could have taken the proceeds in cash, and had he done so, the bank's liability to him would have ended.

He chose as a short cut to deposit the proceeds to the account of estates other than that to which the proceeds beneficially belonged. In doing so he acted as executor, and the bank's liability for this misappropriation could only be based upon the imputation to the bank of the knowledge that Hart had of the wrongful character of this appropriation. Since he was acting in his own interest and under circumstances that rebut any likelihood of disclosure of the facts to the bank, we cannot assent to the conclusion that the bank was liable under sec. 112.01 (8)."

In *Ruben v. Banking Comm.* 216 Wis. 98, 101, 256 N. W. 712, the court held that the mere fact that a bank account is in the name of a trustee as such does not characterize the deposit as special or indicate a trust relationship between the depositor and the bank. The court there said:

"It is true that the deposit was to the credit of the trustees as such, and that the bank had notice that it was to be used to further the general purposes of the testamentary trust, *but the only engagement of the bank was to respond to checks drawn by the trustees.* The account was of indefinite duration and contemplated periodic deposits and checks, thus having every characteristic of an ordinary checking account. The only liability of the bank to the *cestuis,* beyond that existing in case of ordinary general deposits, was that created by sec. 112.01 (8), Stats., in situations where a bank in which there is deposited funds in the name of a fiduciary as such, pays a check with knowledge that the fiduciary was guilty of a breach of trust in drawing the check. The fact that the account is in the name of the trustee as such does not characterize the deposit as special, or indicate a trust relationship between the depositor and the bank." (See cases cited.)

It is clear that Herzfeldt got the moneys of his wards out of the bank on checks issued by him as guardian payable to the order of the Caroline Hardware Company, Inc. These checks were indorsed by the hardware company and cashed by the bank. The bank cannot be held as a guarantor that Herzfeldt as guardian would make only such loans as were

permissible for trust investments under the statutes; nor was there any duty upon the part of the bank through any other of its officers to make inquiry concerning Herzfeldt's transactions with the hardware company. It is apparent that Herzfeldt, as guardian, issued the checks to the hardware company either as loans of the moneys or he used that method to withdraw the guardianship funds from the bank and then used the name and indorsement of the hardware company as a scheme and method of embezzling the funds.

Now as to appellants' contention that the bank is estopped from denying its liability as to the amount of the alleged savings account, we fail to find any basis for the application of the doctrine of estoppel. The court found upon what appears to be undisputed testimony that this alleged savings account was fictitious; that the alleged deposits as shown in the savings-account book and on the savings-account ledger sheet were in fact never made. They were forgeries. Unless the entries in the savings-account book represented actual deposits made, the bank would in no manner be liable therefor. *Schwenker v. Parry,* 204 Wis. 590, 596, 236 N. W. 652. (See cases cited.)

The findings of the trial court are amply sustained by the evidence and cannot be disturbed.

The defendant Banking Commission has given notice of review in connection with its counterclaim against appellant Hildegard Matz. The counterclaim is not referred to in any of the findings made by the trial court, nor did counsel for the Banking Commission make any request for findings on said counterclaim. To preserve its right, it should have requested findings in reference thereto and a disposition thereof in the judgment, either allowing or disallowing same, and then appeal from that part of the judgment providing the counterclaim was disallowed. On the record here, the matter cannot be disposed of on a motion to review. In any event, the motion to review was not timely given. Sec.

274.12, Stats., requires that the notice for a review be given before the case is set down for hearing in the supreme court. In the instant cases, argument was had at the March assignment on March 12th. Notice that they were set down for argument on that date was given by the usual notice on February 17th. The notice of review was served on March 4, 1940. See *Milwaukee Western F. Co. v. Industrial Comm.* 179 Wis. 223, 228, 190 N. W. 439, and *Isaac v. Gerretson Co.* 179 Wis. 417, 191 N. W. 55.

*By the Court.*—Judgments affirmed.

Motions for rehearing were denied, with $25 costs in one case only, on June 4, 1940.