IN the MATTER OF the ESTATE OF Chauncey C. AMES, Deceased: ESTATE OF Chauncey C. AMES, Plaintiff-Appellant, †

v.

MARKESAN STATE BANK, Defendant-Respondent,

Martin KIRST, Defendant.

Court of Appeals

*No. 88-1067. Argued July 11, 1989.—Decided September 6, 1989.*

(Also reported in 448 N.W.2d 250.)

† Petition to review denied.

On behalf of the plaintiff-appellant, there were briefs filed by *Richard L. Olson* and *James E. Bartzen* of *Boardman, Suhr, Curry & Field* of Madison. There was oral argument by *Daniel W. Hildebrand* of *Ross & Stevens* of Madison.

On behalf of the defendant-respondent, there was a brief filed by *Charles J. Hertel* and *Ronald L. Lampe* of *Dempsey, Magnusen, Williamson & Lampe* of Oshkosh. There was oral argument by *Charles J. Hertel.*

On behalf of the Wisconsin Bankers Association, there was an *amicus curiae* brief filed by *Lawrence J.*

*Bugge* and *David W. Reinecke* of *Foley & Lardner* of Madison. There was oral argument by *Lawrence J. Bugge.*

Before Brown, P.J., Scott and Nettesheim, JJ.

NETTESHEIM, J. The estate of Chauncey C. Ames appeals from a judgment dismissing certain of its claims against the Markesan State Bank. The estate claims that the bank, both in its capacity as guardian and trustee, breached a Wisconsin *per se* rule against trustee and guardian self-dealing when it invested guardianship and trust assets in its own certificates of deposit (C.D.'s). Additionally, the estate argues that the bank breached its duty under the prudent person rule, sec. 881.01, Stats., by failing to invest all or a substantial portion of the trust assets in tax-free municipal bonds, an action which would have lessened Ames' income tax liability.

We conclude that the estate has waived its guardianship claim against the bank by failing to raise this claim in the trial court. We also conclude that sec. 221.04(6a), Stats., which allows trustee banks to deposit "uninvested trust funds" in its own accounts, is the controlling law and has abrogated the *per se* rule for which the estate argues. Last, we conclude that the bank did not breach its fiduciary duty when it failed to invest certain trust assets in tax-free municipal bonds. Accordingly, we affirm the judgment.

Alice Phelps-Rider died in 1975. Her will created a trust naming Ames as the income beneficiary. Upon Ames' death, certain nonprofit entities became the income beneficiaries. Phelps-Rider named the Markesan State Bank as the trustee. For a four-year period before Ames' death in 1985, the bank also served as Ames' personal guardian. The corpus of the trust was com-

prised of securities, real estate and other personal property owned by Phelps-Rider at the time of her death. The total value of the trust assets, the bulk of which were securities, was approximately $600,000.

In administering the trust, the bank sold off substantial portions of the securities. Some of the proceeds were invested in the bank's own C.D.'s. The trust received the same rate of interest on these C.D.'s as the bank paid its other C.D. customers.

Ames or his guardianship estate received the trust income until Ames' death in 1985. His estate then initiated the instant action against the bank. The case was tried to the court without a jury. The bank admitted liability on three of the estate's claims and the trial court entered judgment on these claims in the amount of $14,330. The court dismissed the estate's remaining claims. The estate appeals from the dismissal of two of these claims.

■

We first address the estate's claim that the bank violated a *per se* duty against self-dealing when it invested *guardianship* assets in its own C.D.'s. We have examined the record. The pleadings did not allege, nor did the evidence at trial establish, that the bank invested guardianship assets in the bank's own C.D.'s. The estate never raised this issue in the trial court. We will not consider an issue raised for the first time on appeal. *Terpstra v. Soiltest, Inc.*, 63 Wis. 2d 585, 593, 218 N.W.2d 129, 133 (1974).

We turn now to the primary issue on this appeal: whether deposit of trust funds in a trustee bank's own C.D.'s is impermissible self-dealing and a *per se* breach of the bank's fiduciary duty. Self-invested trust deposits in excess of $100 million are held by Wisconsin trustee

banks in this fashion.[1] Given the magnitude of the issue and its unresolved status under Wisconsin law, we certified this issue to the Wisconsin Supreme Court. Certification, however, was denied. The Wisconsin Bankers Association then filed an *amicus curiae* brief with this court in support of the bank's position. All parties, including the *amicus,* participated in oral argument before this court.

The estate argues that since a trustee owes a duty of loyalty to the trust estate and trust beneficiaries, *see In re McCoy,* 142 Wis. 2d 750, 755-56, 419 N.W.2d 301, 304-05 (Ct. App. 1987), the self-deposit of trust assets by a trustee bank is a *per se* breach of that duty under the common law. A deposit creates a debtor-creditor relationship between the bank and its customer. *Peppas v. Marshall & Ilsley Bank,* 2 Wis. 2d 144, 148, 86 N.W.2d 27, 29-30 (1957). When a trustee deposits funds in a bank, the debtor-creditor relationship exists between the bank and the trustee. *See Matz v. Ibach,* 235 Wis. 45, 51, 291 N.W. 377, 380 (1940). Thus, the estate contends that when a trustee bank deposits trust accounts in its own C.D.'s it is acting in two capacities, with conflicting loyalties and interests.

The estate also relies on the Restatement of Trusts, which states that it is a breach of a trustee bank's duty of loyalty to invest trust assets in its own accounts, absent express authorization from the trust document or state legislation. *Restatement (Second) of Trusts* sec. 170 comment m (1959). Additionally, the estate cites to several cases from other jurisdictions in support of its

---

[1]Federal Financial Institutions Examination Council (FFIEC), *Trust Assets of Financial Institutions-1987,* Table A-7, at 64.

position that the *per se* rule would best serve public policy concerns.

Commentators, however, have noted that most states now allow deposits by corporate trustees with their own banking departments. *See* Bogert, *Trusts* sec. 95, at 346 (6th ed. 1987). This is accomplished through legislative validation of the activity, on the condition that the bank set aside as security for the total of the trust deposits a fund of high grade securities, and in some cases account for interest at market rate. *Id.* The bank argues that sec. 221.04(6a), Stats., represents legislative validation of this activity in Wisconsin, when the funds to be so deposited are not otherwise invested. We agree.

■

At one time, Wisconsin common law deemed self-dealing transactions by a trustee as "voidable at the suit of the beneficiary, and not merely presumptively or *prima facie* invalid." *Shaw v. Crandon State Bank,* 145 Wis. 639, 654, 129 N.W. 794, 799 (1911). Subsequent legislative pronouncements, however, significantly narrowed this common-law rule with respect to trustee banks. The so-called "legal list," created by sec. 3, ch. 363, Laws of 1935, expressly permitted trustees to invest trust funds "in certificates of deposit issued by any bank organized under the laws of this state." Several years later the legislature enacted sec. 221.04(6a), Stats. Ch. 359, Laws of 1943. This statute expressly permits banks having fiduciary powers to deposit "uninvested trust funds" in such bank. This court may examine legislation subsequent to a judicial pronouncement of a common-law rule to determine whether the common-law rule has been abrogated. *American Family Mut. Ins. Co. v. Reciprocal Ins. Serv. Exch. Management Co.,* 111 Wis. 2d 308, 310, 330 N.W.2d 223, 224 (Ct. App. 1983).

225

■ The law on this question has moved from the common law presumptive voidance of transactions involving trustee self-dealing to one of limited legislative approval of trustee banks self-dealing in situations involving "uninvested trust funds." This, we conclude, represents a limited legislative abrogation of the common-law rule which permitted the presumptive voidance of such transactions.

Thus, the question on appeal narrows to one of statutory interpretation and whether the statute applies in this case. In Wisconsin, sec. 221.04(6) and (6a), Stats., governs state bank trust powers. Section 221.04(6a) was enacted in its present form on June 23, 1943, eight years after publication of the *per se* rule of the Restatement. Ch. 359, Laws of 1943; *Restatement (Second) of Trusts* sec. 170 comment m (1935). The statute reads as follows:

(6a) TRUST FUNDS, HOW KEPT. Every such bank exercising trust powers shall keep its trust accounts in books separate from its other books of account. All funds and property held by it in a trust capacity shall, at all times, be kept separate from the other funds and property of the bank, *except that uninvested trust funds may be deposited in an account in such bank* or in any other bank, provided any such bank is a member of the Federal Deposit Insurance Corporation. All such deposits of uninvested trust funds shall be deposited as trust funds to its credit as trustee and not otherwise. All bank accounts comprising trust funds so deposited shall, in the event of insolvency or liquidation of any bank in which such accounts are maintained, have preference and priority in all assets of such bank over its general creditors without the necessity of tracing or identifying such trust funds.

Sec. 221.04(6a) (emphasis added).

The interpretation of a statute and the statute's application to an undisputed set of facts are questions of law, which we review independently of the trial court's conclusion. *L & W Constr. Co. v. Wisconsin Dep't of Revenue,* 149 Wis. 2d 684, 688–89, 439 N.W.2d 619, 620 (Ct. App. 1989). In construing sec. 221.04(6a), Stats., we must ascertain the legislature's intent by first looking to the language of the statute. *See id.* at 689, 439 N.W.2d at 620.

The language of sec. 221.04(6a), Stats., allows a trustee bank to deposit "uninvested" trust funds in its own accounts, provided that in the event of insolvency the trust is protected against losses. This protection is accomplished through deposit insurance, earmarking and liquidation priority. *Id.* The estate does not dispute that the bank has complied with the statute in terms of protecting the trust from bank insolvency. Also, both parties agree that bank C.D.'s are bank accounts within the meaning of sec. 221.04(6a). The question turns then on the interpretation of the word "uninvested."

The estate, relying on *Estate of Swiecicki,* 477 N.E.2d 488, 493 (Ill. 1985), argues that "uninvested" means "funds awaiting investment," thus limiting the bank's self-investment to instances of short duration. In *Swiecicki,* a bank, acting as guardian of the estate of a minor, invested the guardianship funds in its own C.D.'s and savings accounts. The Illinois Supreme Court held that this investment created a conflict of interest and that the Illinois statute which permitted self-investment of funds "awaiting investment or distribution" did not apply to guardian banks that invest guardianship funds in their own accounts on a long-term basis. *Id.* at 491, 493. We conclude that *Swiecicki* is not helpful to us in

interpreting sec. 221.04(6a), Stats., because *Swiecicki* interprets the phrase "awaiting investment or distribution," not the term "uninvested." *See Swiecicki,* 477 N.E.2d at 493.

The bank asserts that the language of sec. 221.04(6a), Stats., expressly authorizes it to invest trust assets in its own accounts, if the assets are not otherwise invested. The bank argues that sec. 221.04(6a) neither places limitations on the time that funds may remain on deposit with the bank, nor imposes an affirmative obligation upon the bank to invest trust assets in other ways.

We must interpret statutory terms in accordance with their common meaning. Sec. 990.01(1), Stats. That meaning may be ascertained from a recognized dictionary. *State v. Lubotsky,* 148 Wis. 2d 435, 438, 434 N.W.2d 859, 861 (Ct. App. 1988). Uninvested means "not invested." *Webster's Third New International Dictionary* 2499 (1976). "Invested" is defined as money "commit[ted] . . . for a long period in order to earn a financial return." *Id.* at 1189. Therefore, we conclude that funds which are not otherwise committed for an extended period for purposes of earning financial return are "uninvested" within the meaning of sec. 221.04(6a), Stats., and may be deposited by the trustee bank in its own accounts if the safeguards of the statute are met. The trial court did not make an express finding regarding the investment purpose of the funds used to purchase the C.D.'s. However, the undisputed facts establish that these funds were not "committed for an extended period for purposes of earning financial return."[2] Rather, the

[2]If the facts are undisputed, the question is one of law. *State v. Williams,* 104 Wis. 2d 15, 21-22, 310 N.W.2d 601, 604-05 (1981).

funds, once reduced to "uninvested" status by the prior sales, were immediately used to purchase the C.D.'s. Therefore, the funds were "uninvested" within the meaning of the statute and were eligible for investment by the bank in its own C.D.'s.

■

The estate argues that this interpretation of sec. 221.04(6a), Stats., will enable trustee banks to "uninvest" assets which are otherwise invested so as to deposit the moneys in its own accounts, thereby placing the trust and its beneficiaries at the risks of self-dealing. We disagree. A bank's decision to "uninvest" certain assets, which subsequently may be deposited in the bank's own accounts, is always subject to the prudent person rule, sec. 881.01, Stats., which applies to all activities of fiduciaries. So also is the self-investment decision. In short, the prudent person rule, sec. 881.01, not a *per se* rule, governs trustee self-dealing. [3] We therefore reject the argument that the rule we have articulated will enable trustee banks to liquidate investments in the abusive fashion feared by the estate.

■

The estate does not allege that the bank in this case violated the prudent person standard when it "uninvested" certain trust funds in order to invest in its own C.D.'s. Therefore, we need not decide whether the bank's self-investing in its own C.D.'s was appropriate under sec. 881.01, Stats. We limit our decision to holding

[3]The prudent person rule was enacted by sec. 2, ch. 233, Laws of 1959. Section 3 of this same legislation repealed sec. 320.01(3)–(17), Stats., the so-called "legal list," which, together with sec. 221.04(6a), Stats., previously recited the permitted investments by trustees. In effect, the prudent person rule replaced the "legal list," but not sec. 221.04(6a), which remained on the books.

that the bank did not commit a *per se* breach of its fiduciary duty when it invested trust funds which were not otherwise invested in its own C.D.'s.

Last, we address the estate's claim that the trial court erred when it found no breach of the bank's fiduciary duty to Ames in the bank's failure to invest certain trust assets in tax-free securities. The estate alleged in its complaint that the bank had a fiduciary duty to minimize Ames' income tax burden and that it breached that duty by failing to consider the income tax consequences of its investment decisions. The estate complained that the bank maintained investments which produced income fully taxable to Ames. The estate argued that the bank should instead have invested in tax-free municipal bonds.

When investing trust assets, a trustee is obligated to exercise the standard of care set out in sec. 881.01, Stats. This statute reads in relevant part:

> [T]rustees may invest the funds of their trusts in accordance with the provisions pertaining to investments contained in the instrument under which they are acting, or in the absence of any such provision, then within the limits of the following standards:
> (1) In acquiring, investing, reinvesting, exchanging, retaining, selling and managing property for the benefit of another, a fiduciary shall exercise the judgment and care under the circumstances then prevailing, which persons of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital.

*Id.*

The evidence shows that from the years 1981 through 1984, Ames received $247,136.48 in trust income. During that period he paid federal and state income taxes in the total amount of $65,529.55.[4] The bank president and chief trust officer, Martin Kirst, testified that he was unaware of some of the tax consequences of investing in municipal bonds. Nonetheless, in the expert opinions of David Krumrei and J. Lewis Perlson, the bank did not breach its fiduciary duty in failing to invest in municipal bonds. Krumrei testified that the actual make-up of the trust portfolio (high-yield stocks, treasury bonds, C.D.'s and real estate) was very prudent. Perlson testified that the bank acted prudently, from both investment and tax perspectives, in selling off portions of the stock portfolio and investing in fixed income investments.

Evidence to the contrary came from Richard Kabaker, the estate's expert witness. Kabaker testified that the bank breached its duty to Ames by failing to invest a significant portion of the trust portfolio in municipal bonds. According to Kabaker, this would have minimized Ames' income tax liability, producing more distributable trust income to Ames.

Whether the trustee is prudent in the doing of an act depends upon the circumstances *"as they reasonably appear to him at the time when he does the act and not at some subsequent time when his conduct is called in question." Restatement (Second) of Trusts,* sec. 174 comment b (1959) (emphasis added). Section 881.01(1), Stats., adopts the same theme: "[A] fiduciary shall exercise the judgment and care *under the circumstances then prevailing,* which persons of prudence, discretion

---

[4]A portion of this tax liability was an overpayment by the bank. This overpayment does not form the basis for any issue on appeal.

and intelligence exercise in the management of their own affairs . . .." (Emphasis added.)

We deem the prudent person test under sec. 881.01, Stats., similar to the reasonable man test for negligence. Such a test presents a mixed question of fact and law. *Millonig v. Bakken,* 112 Wis. 2d 445, 450, 334 N.W.2d 80, 83 (1983). What the person [trustee] did or did not do is a question of fact. *Id.* What a reasonable person [trustee] would have done in the same circumstances is a legal question. *Id.* Ordinarily, an appellate court need not defer to the trial court's determination of a question of law; however, a trial court's legal conclusion as to reasonableness is so intertwined with the factual findings supporting that conclusion, an appellate court should give weight to the trial court's conclusion regarding reasonableness. *Ozaukee County v. Flessas,* 140 Wis. 2d 122, 127, 409 N.W.2d 408, 410 (Ct. App. 1987).

The trial court assessed the estate's claim that the bank acted imprudently by failing to heavily invest in municipal bonds as hindsight, conjecture and speculation. We agree. The test for a breach of a trustee's fiduciary duty is not whether, in hindsight, a more lucrative investment could have been made measured from the standpoint of safety, value, income or tax consequences. Rather, the question is whether, *under the circumstances then prevailing,* a prudent man would have acted differently.

Merely demonstrating that Kirst, personally, was unaware of certain investment tax consequences and that Ames would have paid lesser taxes had the trust heavily invested in tax-free municipal bonds does not necessarily translate into a breach of the bank's fiduciary duty to Ames. As we have already noted, certain of the

232

expert testimony adopted by the trial court opined that notwithstanding the bank's ignorance of certain tax consequences, the bank's performance was prudent. As the trial court noted, the bank's investment policy met all of Ames' needs, and provided him a comfortable existence, including certain luxuries. Thus, Alice Phelps-Rider's objective in naming Ames as the initial income beneficiary of her trust was well satisfied. In addition, the record in this case shows that the value of the trust assets, and the income produced therefrom, steadily increased over the course of the bank's administration of the trust.

So long as trustees act in good faith and from proper motives and within the bounds of a reasonable judgment under the terms and conditions of the trust, the court has no right to interfere. *Estate of Filzen,* 252 Wis. 322, 326, 31 N.W.2d 520, 522 (1948). It is only when trustees act outside the bounds of a reasonable judgment, or are guilty of an abuse of discretion, or when they act dishonestly and improperly that the court may interfere. *Id.* The trial court, opting for the expert testimony supporting the bank's position, concluded that the estate's expert was engaging in hindsight. The court concluded that the bank's conduct was in keeping with the prudent person test. Giving appropriate deference to this conclusion, we decline to substitute our judgment for that of the trial court, particularly since it is premised upon an assessment of the competing expert witnesses' testimony.

*By the Court.*—Judgment affirmed.